The next case this morning is Shane Watkins v. Steve Kallis. Ms. Lindsey. Your Honor, it may please the Court, Caroline Lindsey for Petitioner-Appellant Mr. Shane Watkins. The government does not contest the merits of Mr. Watkins' claim before the Court today. It concedes that his mandatory life sentence was illegal. Despite the submission of error, the government insists there's nothing this Court can do today to right that wrong, invoking myriad alleged procedural obstacles including mootness, abuse of the writ, and the Savings Clause. The government's attempts to avoid a correction of the District Court's error in this case all fail because Circuit precedent supports Mr. Watkins across the Board. This is made clear not only by our own briefs, but also by the government's brief, which repeatedly has to resort to disregarding or advocating to overturn several well-settled precedents of this Court. Take the government's Savings Clause argument as an example. It cannot satisfy any of the Davenport factors, even though just last week this Court made clear that under the Circuit's precedents, there remains no lingering question as to whether a Mathis claim, like the one advanced by Mr. Watkins in this case, can proceed under 2241. Mathis is unquestionably a statutory decision, and as this Court held in Chazen, it is new as a functional and practical matter for federal inmates like Mr. Watkins, whose Court made clear in Narvaez and Light, an erroneous mandatory sentencing enhancement like the one that Mr. Watkins suffered is, quote, clearly a miscarriage of justice. And the errors in those cases, I will point out, was far less grave than the error here. For example, in Light, the statutory floor was raised just 10 years, and in this case, the statutory floor was raised to the ceiling, to life. So if the error in Light was a miscarriage of justice, surely that controls here, and Mr. Watkins' mandatory life sentence is grave enough to be considered a miscarriage of justice. The government does argue that because life was still within the statutorily authorized range with or without this mandatory enhancement, there can be no miscarriage of justice in this case. But that completely disregards this Court's precedent in Narvaez. This Court addressed the exact same argument and dismissed it. It said, quote, to assume that the same sentence would have been imposed in the absence of the career offender provision is a frail conjecture that evinces in itself an arbitrary disregard of the petitioner's right to liberty. It went on to say that even if the petitioner, quote, does not have an absolute right to a lower sentence, he does have an absolute right not to stand before the Court as a career offender when the law does not impose that label on him. And that's at page 629 of the Narvaez decision. We do have this threshold question of mootness in light of intervening events. Of course, your client is now on supervised release. And as a consequence of his sentence reduction of the First Step Act, his sentence was lowered to 15 years. Well, essentially time served, which was the equivalent of 15 years based on the amount of time he had in at that point. And his supervised release term was lowered to the lower statutory term of years for supervised release. So what's left is a possible motion for early release from supervised release or a reduction in the term of supervised release under 3583. And the government argues that that's not enough to force on mootness. Yes. That argument's another case of disregarding circuit precedent, Your Honor. Pope v. Perdue already addressed this exact question. And it held that the potential boom to a 3583 e-motion to terminate or reduce supervised release is enough. In fact, it said any potential benefit is enough. Here, Mr. Watkins has not only the one that Your Honor just mentioned, but also the fact that if he was resentenced to less than time served, that extra time that he had spent in prison would be considered banked time with BOP that he could use to reduce any subsequent term of incarceration on a revocation of supervised release. I will just want to update the panel that we did have a footnote in our reply brief about Mr. Watkins' current incarceration status in county jail. He has since been released and the state has dropped all charges. But nevertheless, the federal government has filed a petition for revocation. His final revocation hearing is set for June 1st. So it's less speculative than we even thought because Mr. Watkins is facing revocation now. And if he were to receive a sentence in connection with those proceedings, this banked time that he could get on remand would be very important to Mr. Watkins. So to say he doesn't have a stake in this appeal is just not true. But because even if we were to disregard the challenged drug convictions as predicate drug felonies for purposes of this argument, he still has one remaining. He's got a federal, a qualifying federal drug conviction, which had a floor of 20 years. And he served 15 at the time of his time served disposition and release as a result of the first step back. So doesn't that distinguish this from the Pope case? He didn't serve too much time in prison, even crediting the argument that's now being advanced for 2241 relief. Sure. But although Your Honor is correct that the statutory floor absent the First Step Act and other legal developments would be 20 years, Mr. Watkins, like any other petitioner who had been sentenced correctly back in 2005 and who perhaps wouldn't have this mandatory sentencing enhancement, is entitled to a First Step Act resentencing based on the correct number of prior felony drug convictions and starting from the correct starting point. The government doesn't point to anything to indicate that the government, that the judge would have, that it was irrelevant to the judge what the starting point was, what the total amount of the reduction was, and what the number of felony, prior felony drug convictions was. So as this court said in the United States v. Trotter, the possibility that the court on remand might have given a lower sentence if it had known that there were, was just one prior felony drug conviction as opposed to three, or if it had known that it was starting from 20 years rather than life. The fact that there's even that possibility is enough to say that there is. Can I ask you a similar, that, the point that Chief Judge Sykes made is on my mind here and it, let me, let me try to put it this way and you can help me unpack this. The, the prior federal narcotics conviction supplied, because of the filing of the 851 prior felony information, right, he had that 20 year mandatory minimum and we don't have any, the jury convictions in place, we don't have any doubt about that. So what, what's hard for me in my mind is to get to the point of how, how given that reality, that's untouched here, how do we get into a world of kind of getting banked time, if you will? How do you ever get there? We get there that, because on remand, the, as Your Honor notes, there's a two-step, right, that's gonna happen. Sure. I, I would posit that it would be under probably all of the same proceeding. Mr. Watkins would plan on remand to file a motion for first-step act resentencing at the same time as disciplinary resentencing pursuant to this court's judgment. And so at that time, the court would, you know, kind of pro forma reduce it to 20 years and then engage in the resentencing or the reduction under the first-step act that Mr. Watkins is entitled to. And at that rather than three, and it would be bound by that precedent, of course. And so it would be engaging in this first-step act analysis, considering different factors and starting from a different starting point. The government cannot, this, the standard is very important here, because it is not on Mr. Watkins to prove that it's likely that the district court is gonna give him less than time served and that he's gonna have this excess time that can benefit him. The government has to prove that it's not possible for him to benefit from success on appeal. This court must be confident that it's impossible for him to benefit. That's the standard this court set forth in Trotter. And that's just, the government cannot carry this burden here. In fact, I think it's very telling that the government doesn't even try to carry that burden. Instead, it tries to rely on Spencer B. Kima, a much more friendly standard. Ms. Lindsey, I know we've said that in Trotter and in Pope. Yes. And I confess I hadn't focused on that question before. And as I read that language in our invitation for speculation, and I'm thinking about our broader Article 3 jurisprudence and the Supreme Court's broader Article 3 jurisprudence, whether we're talking about standing or ripeness or mootness, generally it's a pretty good argument if you can convince the court that the other side is asking it to speculate. Absolutely, Your Honor. I understand why you would kind of have those reservations. But this panel is bound by circuit precedent and the court's language in Popey-Purdue is quite clear, and in U.S. v. Trotter. It does invite a degree of speculation, and I will posit that even the Supreme Court's Article 3 precedents involve some... It wasn't enough in Clapper. Sure, sure. But Clapper is a different case than what we have here. And frankly, again, unless this panel is going to take this question en banc, Popey-Purdue does squarely control this case. It's just not possible to rule that this case is moot because of the speculative nature of the benefit, because that was already decided in Mr. Watkins' favor in Popey-Purdue and U.S. v. Trotter. The Spencer became the standard that the government relies on. The decision in Pope made very clear that it doesn't apply here. So this case is not moot. It's excused of abuse of authority and miscarriage of justice has been affected on Mr. Watkins, and as this court recognized in Franklin v. Keyes, there's no lingering question as to whether or not he can proceed under 2241. So we would ask this court to award relief, and I'll reserve my remaining time for rebuttal. This court has no further questions. Thank you. Mr. Court, Jeff Kinstra for the respondent. Beginning with jurisdiction, this petition is moot because Watkins has received what he wanted and more. As your honors have noted, even if no error had occurred at sentencing, he still would have faced a mandatory minimum of 20 years. Yet he was released after 15 years, and the only reason that occurred was the First Step Act, but when that act came about and he moved for relief, he got exactly what he wanted. I think the other way to conceptualize this issue is that the injury that supported his petition in the first instance was that at some point after 20 years, he would have begun serving a period of imprisonment that the court wouldn't have imposed had it realized it had the discretion. So maybe that was at 20 years, 25, maybe it was at 30 at the guideline range, but at some point he would have begun serving a term of imprisonment that the court wouldn't have imposed. What makes this claim moot is that he never suffered that injury. He never got to that point, and we know that for certain because he was released before he got to the 20-year term. And so that presents, I think, redressability problems that are very different from Pope. Because in Pope, there was no question that he did suffer that injury. He over-served his sentence. And so that was redressable essentially because having over-served one aspect of his custody could be redressed by shortening a second aspect of his custody, as that's understood in the habeas context. So I think Pope doesn't control here, and there are redressability and speculativeness problems. And I think this court's decision from last month in Shorter, I believe it was, really speaks to that. Because, of course, the defendant there was seeking compassionate release because of his risk from COVID. What he wanted was a sentence reduction to time served to allow him out. What he got was an intervening event came up where he was moved to home detention essentially. It was still, of course, possible for him to obtain relief. But that wouldn't have redressed the injury that he was complaining of and any other benefits that he might have obtained were simply too speculative. There's also essentially too attenuated a chain of causation for the defendant to prevail, even to benefit from the relief that he's seeking. As your honors have noted, it's essentially a two-step. The first step I think remarkably would be to go back in front of the district court and ask it to impose a sentence of less than time served for the stated purpose of allowing him to bank time towards a future term of on a revocation. Essentially, that's just asking the court to tie its hands in the first instance when it could equally take all those factors into consideration on the back end if the defendant is actually revoked. Of course, then he also has to violate his supervision and be adjudicated in violation. Then the court has to actually impose a term of imprisonment. Under Shorter, essentially our position is that's just too speculative. In any event, it wouldn't redress the injury because he didn't actually over-serve his sentence. It does sound a little less speculative right now given that there's a revocation petition pending. Sure, I'm happy to speak to that. Can you tell us anything about the government's position on how these issues we're debating today might affect the decision the district court may need to make on that petition? As Ms. Lindsey noted, the defendant spent some time in jail on charges in state court for I believe it was possession of a stolen vehicle or something along those lines. When those charges were filed, the probation office filed the petition to revoke on the basis of that charge. That charge has since been dismissed in state court. Obviously, I can't make any representation about what the government will do with it. The disposition hearing is in June. I think it would be appropriate for the defendant to argue at a revocation hearing. Listen, I've received a life sentence. That was a very harsh sentence. It wasn't required. As even the court made very clear at sentencing, it didn't want to impose that sentence. All that is, I think, fairly before the court. What the court would choose to do with it, I think, is arguable. Would the government agree that it is appropriate to consider such matters in deciding consequences for revocation or violation of supervised release terms? I don't think we would disagree with that as a categorical matter. I think he could argue that having spent his time subject to a life sentence made that term more onerous and that that's a mitigating factor that the court should take into account in considering how his time or what remedy to impose for anything he did after that term. I don't think as a categorical matter he couldn't present that argument. Of course, district courts could decide, view that in a lot of different ways. Judge McDade said at the hearing, the first effect hearing, that the defendant could thank him for the reduction by never coming back before the court again. Wasn't the problem of a speculative form of relief also present in Pope? That was based on an entirely speculative possibility of a future 3583 motion at which the time that the defendant overspent in prison might become a factor. The government argued that and some circuits take that view that even that is too speculative. I think the panel in Pope didn't take that view. It said that having overserved a sentence would carry great weight in a sentence reduction. I think the panel in Pope didn't really view it itself as granting speculative relief. I thought it was granting practical relief that the petitioner would benefit from. It also, I think, directed the transfer of that petition to the sentencing judge so that it would all be essentially wrapped up into one. Mr. Keenstra, if we focus on your arguments on the abuse of the writ here. Tell me if I'm wrong, but I understood you to be arguing that the petitioner's theory for relief on the merits has to be different from his argument that this is a miscarriage of justice that needs to be corrected so I'm not abusing the writ. That was one component of the argument based on this court's decision in Peron where it said it was doubtful that the same claim could do double duty because essentially that would immunize the claim against any procedural bars. Yeah, but I mean to the extent we're going back to pre-1996 law and allowing the writ to be used to correct injustices under sufficiently compelling circumstances, why do you need two different theories? Because here we're not talking about pre-1996. It's the first 2241 petition versus the second. That's what gives rise to abuse of the writ. And so under the petitioner's theory... We're applying a much longer tradition or body of law on the abuse of the writ, right? Oh, for sure. And that body of law, the Supreme Court has made clear, it's explicitly tied the miscarriage of justice to the petitioner's innocence. And when it's applied that, the only sentence it's ever applied that to is a death sentence. But it's made clear in that context that it has to require at least an eligibility for the sentence. Factors that went not to eligibility but other issues that even would have conclusively demonstrated that he wouldn't have received the death penalty simply don't suffice. It has to be eligibility. And Watkins simply can't make that showing. Even without any predicate offenses, he was eligible for a life sentence. The Supreme Court has also made clear that not all actual innocence claims are the same. One standard applies when a petitioner is arguing that he's in fact innocent of his offense. It's very different when a person is guilty but arguing that he's innocent of a death penalty. In that circumstance, a higher standard of proof applies. And again, it has to go to eligibility. So the idea that it's just the same actual innocence exception in all contexts I think is not true. Can I ask you a question? This is going to seem a little detailed to you, but I just want to make sure I know what you had in mind. In your red brief on page 18, you say, this appeal doesn't turn on whether Watkins was properly subject to a mandatory life sentence. This is at the very bottom. This court's intervening case law has already made clear he was not. Correct. What case law? Ruth? Yes. Okay. Okay. And your point, well, Ruth makes that clear. But your point on the first, the overarching, the kind of 2241 Savings Clause issue is that, sure, Ruth may make that clear, but that position was available before Mathis. Nothing depended upon Mathis to be able to make that argument. Right. So that gets us into whether the claim relies on Mathis and whether the claim was foreclosed. Right. We've been focused on mootness and relief and all that. Right. So Ruth is what you have in mind there. Yes, for sure. And just to clarify as a follow-up before you get into whether this is Mathis or not, this is a 401D claim under the Illinois statute, as I understand it. That's what the two convictions at issue were keyed to, those statutory violations. Ruth was 401C? That's correct. But the common thread was that they both involved the overbred of cocaine based on the ICE news. Okay. Understood. Now you can go on to your next argument. Okay. I see that I'm out of time. I'm happy to proceed with the 2241 if you guys have any questions. If you would just devote a sentence or two to the argument that you were about to proceed on about whether Mathis is at issue here. Sure. So I think it's not for two reasons, if I may. The first is that the claim would proceed the same even if Mathis were decided in the opposite direction because the Shepard documents here only allow us to drill down far enough to see that it involves cocaine, which we know from Ruth is overbroad. And on foreclosure, nothing stood in the way of making a Ruth argument. This court has reiterated that in several cases, Nubbinger, White, that the basis and authority for Ruth were in place since Taylor in 1990. This court had never rejected a substance overrath argument, never considered one. So unless your honors have any questions. Thank you. Thank you. Ms. Lindsay. Your Honor, several points of rebuttal. I'll try to get them all in. Starting with mootness, I was surprised to hear the government say that the district court on a revocation sentencing proceeding would be able to consider these proceedings under Johnson, the Supreme Court's decision in Johnson, because these terms are interchangeable. I would suspect the district court would not find that appropriate to consider these things. Also, the banked time that Mr. Watkins would benefit from is based on a finding that he served more than necessary in prison, which he can only have that conclusion be at play if this court awards relief and he gets to redo the First Step Act reduction on remand. Without that proceeding, he doesn't have these arguments in his revocation sentencing proceeding or in a 3583E motion, which is a second and independent benefit that he seeks to avail himself from. Second, I would just say that to argue that there was no injury until he hit that 20-year mark, I think fails to appreciate the burden on a petitioner of a mandatory life sentence without possibility of parole or release, and also to fail to appreciate the injury he suffered here and having a First Step Act proceeding that was tainted by the illegal defect. There's never been a correction or it's never been vacated of the last sentence. And I finally just wanted to point out that, as Your Honor noticed, Ruth did address a different provision under Illinois law. It specifically is just about cocaine. It is different in kind from 401D, which has three different categories of drugs. Therefore, the divisibility argument is very important to Mr. Watkins' claim in a way that it wasn't in Ruth. And in fact, the government didn't even argue that the subsection in Ruth was divisible. So that's why the court didn't address it. Thank you. All right. Thank you very much. Our thanks to both counsel and the court thanks Ms. Lindsay and her law firm for accepting this appointment and briefing and arguing the case so evenly. Thank you.